AO 106 (Rev. 04/10) Application for a Search Warrant                          AUTHORIZED AND APPROVED/DATE: s/ Nick Coffey 10/23/23

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A blue iPhone, serial number unknown, located at HSI<br>3625 NW 56th St., Third Floor, Oklahoma City 73112 | )<br>)<br>)<br>)<br>)<br>) | Case No.  M-23- 873 -STE |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Western _____ District of _____ Oklahoma _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841 | Distribution of a Controlled Substance |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Fidel Saenz, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  __Oct 24, 2023__

City and state: __Lawton, OK__

_____
*Judge's signature*

Shon T. Erwin, U.S. Magistrate Judge
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In the matter of the search of a **blue Apple iPhone, serial number unknown,** located at HSI Oklahoma City, 3625 NW 56th St., Third Floor, Oklahoma City, Oklahoma 73112 | Case No. M-23- 873 -STE |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Fidel Saenz, Special Agent with the Homeland Security Investigations (HSI), having been duly sworn, depose and state as follows:

1.      I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device identified below and in **Attachment A**, which is currently in law enforcement possession—and the extraction from that property of electronically stored information described in **Attachment B**, which constitute evidence, instrumentalities, and fruit of violations of 21 U.S.C. §§ 841(a)(1) and 846.

2.      I am a special agent ("SA") of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and as such am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C.

§ 2516.  I have been employed as a special agent with DHS/ICE/HSI since June 2017.  I am currently assigned to the HSI Office of Oklahoma City, Oklahoma.

3.      During the course of my employment, I have participated in numerous drug investigations involving marijuana, cocaine, heroin, fentanyl, and methamphetamine, which have resulted in the arrests of targets, the seizure of illicit drugs and drug-related evidence, and the forfeiture of drug-related assets.   I have conducted and supervised complex financial investigations involving the trafficking of drugs and other contraband, and money laundering including the structuring, placement, and layering of large amounts of U.S. currency.  I have participated in and/or executed search and seizure warrants authorizing the search of locations used by drug traffickers and their co-conspirators, as well as vehicles used to transport controlled substances.   Materials searched for and recovered in these locations have included controlled substances, packaging materials, scales, cutting agents, weapons, documents and papers reflecting the identities of co-conspirators and receipts for concealed investments, and proceeds from the distribution of controlled substances.   I have personally participated in interviews of witnesses and cooperating sources regarding illegal trafficking in drugs and have read official reports of similar interviews by other officers.  I have also participated in surveillance operations, observing and recording movements of persons trafficking drugs and those suspected of trafficking drugs.

2

4.     As part of my drug-related investigations, I have coordinated and assisted with the execution of several search and arrest warrants, conducted physical surveillance, coordinated and executed controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. Through my training and experience, I have become familiar with some of the methods by which illegal drugs are imported, distributed, and sold, as well as the means used by drug dealers to disguise the source and nature of their profits including money laundering and structuring schemes. I have also gained experience in the conducting of such investigations through attending financial investigations training, cyber-crimes investigations training, drug investigations training, seminars, and everyday work. In light of this training and experience, I know the following:

a.     I am aware of the methods in which drug couriers and distributors associated with drug trafficking organizations (DTOs) often use electronic devices, including computers, tablets, cell phones, and other electronic storage devices, to communicate and execute electronic transactions which can, in turn, create automatic records and documentation of the transactions;

3

b.     I am aware that that it is particularly common for individuals engaged in the sale and distribution of illegal narcotics to use electronic devices to track and document financial transactions;

c.     I am aware that individuals engaged in drug trafficking will often maintain more than one cell phone or electronic device, and that they will frequently keep contact information and other evidence of their financial dealings with DTOs on cellular phones, computers, tablets, and other storage devices and that they often keep such electronic devices on or near their person.

d.     I am also aware that individuals engaged in the sale and distribution of illegal narcotics will use cellular phones to further their financial businesses using digital communication, including, but not limited to, e-mail and instant messaging; and

e.     I am aware that drug traffickers use their cellphones and other electronic devices to execute financial transactions through banks, financial institutions, and peer-to-peer mobile payment platforms in furtherance of their drug trafficking.

5.     I am submitting this Affidavit in support of a search warrant authorizing a search of one cellular telephone, a **blue Apple iPhone, serial number unknown,** located at HSI Oklahoma City (hereinafter the **Target Phone 3**), as further described in **Attachment A**, which is incorporated into

4

this Affidavit by reference.  HSI has custody of the **Target Phone 3** at the HSI office in Oklahoma City.  I am submitting this Affidavit in support of a search warrant, which would authorize the forensic examination of **Target Phone 3** for the purpose of identifying electronically stored data that is particularly described in **Attachment B**, which constitute instrumentalities, evidence, and fruits of violations of 21 U.S.C. §§ 841(a)(1), 846. The requested warrant would also authorize the seizure of the items and information specified in **Attachment B**.

6.     Based on my training, experience, and the facts set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have been committed by **Naigang Lin (LIN)** and others. There is also probable cause to search the property described in **Attachment A** for instrumentalities, evidence, and fruits of these crimes, as described in **Attachment B**.

7.     Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant.  The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience,

conversations with other law enforcement officers and witnesses, and review of documents and records.

## PROBABLE CAUSE

8. On July 5, 2023, a federal grand jury returned an indictment against Naigang Lin (**LIN**) and his associates for money laundering and black-market marijuana distribution. As explained in more detail below, **LIN**—a longtime Michigan resident—appears relocated to the Western District of Oklahoma, where he served as a marijuana broker, taking advantage of the state's recent increase in marijuana grows—many of which investigators have determined are out of compliance with state law and are selling marijuana on the black-market. I believe that **LIN** was sourced by these marijuana grows and was also providing money-laundering services to them. LIN, who had been a fugitive from justice, was arrested on approximately August 15, 2023, in possession of **Target Phone 3**.

9. As part of this investigation, HSI agents have done extensive financial analysis on accounts utilized by known members of the organization and have discovered that **LIN** has orchestrated the laundering of approximately $25 million in illicit proceeds from illegal marijuana grows, illegal underground gambling, and Ketamine trafficking since 2020. Law enforcement believes that **LIN** and his associates primarily used wire transfers and the purchase of real estate, cars, and businesses in order to launder their

criminally derived proceeds, which I know from my training and experience is a common manner of laundering funds.  To date, law enforcement has seized the following from **LIN** and his organization: more than 4,000 marijuana plants from illegal marijuana grows, more than 3,500 pounds of processed marijuana, and over $225,000 in U.S. currency.

***LIN's Relocation to Oklahoma City***

10.    In February of 2022, GPS location information on **LIN's** phone number (616) 606-2484 (the "-2484 number") indicated that **LIN** moved to Oklahoma City and established his operation there.[1]

11.    A few months later, on May 17, 2022, **LIN** was subject to a traffic stop in Oklahoma City, during which officers utilized a K-9 to perform an open-air sniff of the vehicle. When asked if there were any drugs in the car, **LIN** indicated there were not.  When asked if there was a large amount of currency, **LIN** stated there was $90,000 in the vehicle from his restaurant and it was going to be used to buy a house.  A search of the vehicle revealed the following

---

[1]  Law enforcement identified this number after Michigan State Police executed a search warrant in October 2021 at a residence in Michigan owned by **LIN**. During the search, police located an illegal marijuana grow and seized more than 3,000 marijuana plants and approximately 42 pounds of processed marijuana. One of the workers at the grow identified the -2484 number as belonging to **LIN**.  Since then, law enforcement has applied for and received authorization several times, including within the Western District of Oklahoma, to collect GPS ping data on the -2484 number. Surveillance on **LIN**, paired with the ping data, continues to confirm that he is the user of the -2484 number.

items: $90,000 in U.S. currency in a green bag and bundled in stacks with rubber bands, poker tables, boxes of dominos, boxes of playing cards, a notebook that appeared to contain ledgers of large money amounts, three cell phones, and empty vacuum-sealed bags.  During the search, the officer noticed that one of the phones in the vehicle displayed a GPS, which showed the vehicle had traveled from Vinita, Oklahoma, in the northeast part of the state—which contradicted **LIN's** statement that he was coming from Chinatown in Oklahoma City.  After the search, **LIN** was released, and the $90,000 and vacuum-sealed bags were seized by officers.

### *The February 2023 Marijuana Seizure from LARIOS and FLORES*

12.    On February 09, 2023, during surveillance of a warehouse located at 1224 N Council Rd in Oklahoma City, Oklahoma, 73127, agents observed a white Honda van, bearing Oklahoma license plate LJD217 (registered to Luis Larios Benites), procced to back into the garage of the warehouse. Approximately two minutes later, the door to the garage opened, and the white van exited the 1224 N Council Warehouse.

13.    Agents continued to follow the Honda van and coordinated with Oklahoma Highway Patrol (OHP) to conduct a traffic stop on the Honda van. Once OHP arrived and got behind the van, the OHP unit observed the van conduct an unsafe lane change and initiated a traffic stop at Council Rd and NW 39th St.  During the traffic stop, the OHP Trooper smelled a strong odor of

marijuana coming from the vehicle. The Trooper then detained the driver, Luis Larios-Benites and passenger, Angel Joaquin Daniel Flores, and conducted a search of the vehicle. During the search, approximately 162 pound of marijuana was discovered in large black trash bags; officers also found a loaded pistol in the center console.   BENITES and FLORES were subsequently arrested.

14.   Utility information for the 1224 N Council Rd Warehouse was listed under **LIN's** name, and had been so since approximately October 31, 2022.

### *The February 2023 Marijuana Seizure from ALLEN*

15.   On February 21, 2023, law enforcement was conducting surveillance at one of the **LIN's** suspected stash houses, located at 5800 Sanabel Court, Oklahoma City, Oklahoma (the "Sanabel Residence").  Around the same time, law enforcement also surveilled **LIN**, two previously identified associates—Chang Chen (CHEN) and Meiyan Xiao (XIAO)—and a fourth, still-unidentified male travel from Private Kitchen to the Sanabel Residence.[2]

---

[2]   Consistent surveillance at the Sanabel Residence has established that vehicles will regularly arrive, the garage door will open, and the vehicle will back into the garage, where it stays for approximately one to two minutes before departing.  Based on my training, experience, and knowledge of the investigation, I know that this pattern of activity is indicative of individuals either delivering or picking up drugs and/or drug money at a residence and is not consistent with ordinary visits.

While at the residence, a white Toyota van bearing Oklahoma plate IKP742 (registered to Feng Li at 504 NW 181st St., Edmond, Oklahoma) arrived at the residence and parked in the street. Several minutes later, XIAO opened the garage and the van backed in. After approximately 30 seconds, the garage door opened, and the van departed. Based on my training, experience, and knowledge of the investigation—including what happened next—I believe that the white van was delivering marijuana to the Sanabel Residence.

16.     After approximately 30 minutes, a blue-colored GMC Sierra bearing Oklahoma plate LYK703 (the "blue GMC") arrived at the Sanabel Residence and backed into the driveway. The driver then exited the vehicle and went into the residence. Agents had previously identified this vehicle as belonging to Terrance Allen (ALLEN), with a registered address of 8117 NW 84th St, Oklahoma City, Oklahoma—where surveillance has confirmed that **LIN** resides. ALLEN was previously identified as a courier for **LIN** when, in May of 2022, ALLEN flew with **LIN** to Washington D.C. and then separately flew to Tampa, Florida. While in Tampa, ALLEN was traffic stopped while driving a U-Haul, during which law enforcement seized approximately 1,900 pounds of marijuana.

17.     Approximately 30 minutes after ALLEN's blue GMC arrived, the garage door of the Sanabel Residence opened, and the blue GMC was backed into the garage. Agents observed the back doors of the vehicle being opened as

10

well and an unknown individual putting something in the backseat. Approximately ten minutes later, the truck exited the garage and departed as **LIN** came out of the garage and watched the vehicle depart. Law enforcement, trailing the vehicle, observed it conduct multiple countersurveillance maneuvers, including making U-turns in the middle of the road. ALLEN also appeared to be looking for law enforcement when he stopped at a gas station, exited his vehicle, and looked around before entering the store. ALLEN soon exited the gas station carrying an unknown item and returned to the Sanabel Residence, where ALLEN exited the vehicle and gave the item to **LIN** in the driveway and departed.

18. Agents continued to follow ALLEN, who continued to display what I believe were countersurveillance measures. OHP eventually conducted a traffic stop after ALLEN was observed speeding. During the traffic stop, the OHP trooper could smell a strong odor of raw marijuana coming from the vehicle. Because of evasive responses given by ALLEN, paired with the smell of raw marijuana, OHP conducted a probable cause search of the vehicle, which yielded approximately 262 pounds of marijuana that was contained in several large black trash bags in the bed of the vehicle and a large duffel bag in the backseat of the vehicle. ALLEN was subsequently arrested, and his phone seized. Following his arrest, ALLEN admitted that he was a "transporter" but denied knowing the precise nature of what he was transporting.

19.    All of the above leads me to believe that **LIN** continues to serve as a large-scale marijuana broker and money launderer and that he is now doing so from the Western District of Oklahoma.

### *Criminal Complaint Filed on LIN*

20.    On approximately May 2, 2023, in connection with that investigation, a sealed criminal complaint was filed against **LIN** and others charging them with a drug conspiracy, specifically a conspiracy to possess with intent to distribute and to distribute marijuana, from on or about January 1, 2019, through on or about May 1, 2023, in violation of 21 U.S.C. § 846.  On the same day, a federal arrest warrant was issued for **LIN**.

21.    On May 10, 2023, multiple search warrants and arrest warrants were executed, or attempted to be executed, across several states for **LIN** and his associates.   Agents attempted to arrest **LIN** on the morning of May 10 at his residence at 8117 NW 84th St, Oklahoma City, Oklahoma, but were told by his girlfriend, Juan Lyu, that he had left the residence.  Multiple attempts to contact **LIN** through his girlfriend were unsuccessful.

### *Grand Jury Indictment of LIN in the Western District of Oklahoma*

22.    On July 05, 2023, **LIN** was indicted in the Western District of Oklahoma for violations including but not limited to Title 21, United States Code, Sections 841(a)(1) and 846, both specified unlawful activities and violation of Title 18 USC, Section 1956(a)(1)(B)(i).

12

### *Identification of LIN's Whereabouts*

23.     HSI identified multiple new phones for **LIN** with subsequent GPS pings, which indicated that **LIN** was possibly in Los Angeles and/or the Las Vegas area.

24.     On August 8, 2023, HSI Grand Rapids obtained a cell site warrant for a new phone belonging to **LIN** that agents were currently pinging; the pings showed he was in the Los Angeles area.

25.     On August 9, 2023, **Target Phone 3** began to travel via automobile eastbound from Los Angeles, arriving in Atlanta on August 10, 2023.  HSI Atlanta's Strikeforce team, along with the United States Secret Service, executed a cell site warrant on August 14, 2023, and determined **Target Phone 3** was in a residence located at 2277 Hawks Bluff, Lawrenceville, Georgia.  In front of the residence was a vehicle registered to a known associate of **LIN's** as well as a MI plated rental vehicle.  According to LPR (License Plate Reader) data, the rental van made the same route from Los Angeles to Atlanta as the phone belonging to **LIN.**

26.     On August 15, 2023, two males and a female entered the rental van and departed the residence.  GPS pings on the **Target Phone 3** indicated **Target Phone 3** was inside the van.  A subsequent traffic stop of the vehicle resulted in the arrest of **LIN**, the passenger in the vehicle.  **LIN** was transported to the county jail and his phone (**Target Phone 3**) was seized as

a result of the arrest. Upon being arrested, **LIN** made extemporaneous statements that he was aware law enforcement had been looking for him.

27. Based upon my training and experience, I am aware that individuals involved in trafficking illegal drugs often use cell phones to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal narcotics. Such cell phones and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of drug trafficking offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, and videos. I am also aware that individuals involved in drug trafficking often carry more than one cell phone and use more than one cell phone in furtherance of drug trafficking.

28. Based on my training and experience, I know that individuals involved in trafficking illegal drugs often take and store photographs of controlled substances and the proceeds of drug sales, and usually take and store these photographs using their cell phones.

29. Based on my training and experience, I know that electronic devices like **Target Phone 3** can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the electronic device. This information can

14

sometimes be recovered with forensic tools. This is true even if the user of the electronic device deleted the file. This is so because when a person "deletes" a file on a computer or electronic device, the data contained in the file does not actually disappear; rather, the data remains on the storage medium until it is overwritten by new data.

## AUTHORIZATION REQUEST

30.     Based on the above information, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have occurred, and that evidence, fruits, and instrumentalities of these offenses are located on the **Target Phone 3**.  Therefore, I respectfully request that this Court issue a search warrant for the **Target Phone 3**, described in **Attachment A**, authorizing the seizure of the items described in **Attachment B**.

31.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Target Phone 3** consistent with the warrant. The examination may require law enforcement to employ techniques, including but not limited to computer-assisted scans of the entire medium, which might expose many parts of the **Target Phone 3** to human inspection in order to determine whether it is evidence described by the warrant.

32.     Because the warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not

involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

33.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed, unless the Court issues a subsequent order to further delay notification.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  This is an ongoing investigation, targeting multiple co-conspirators, that may continue for several additional months.  Providing immediate notice to the owner of **Target Phone 3** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in **Attachment B**, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).

Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

FIDEL SAENZ
Special Agent
Homeland Security Investigation

SUBSCRIBED AND SWORN to before me this 24th day of October, 2023.

SHON T. ERWIN
United States Magistrate Judge

17

## <u>ATTACHMENT A</u>

The **Target Phone 3** is a blue iPhone, serial number unknown, currently located at the Oklahoma City field office of Homeland Security Investigations, located at 3625 NW 56th St., Third Floor, Oklahoma City, Oklahoma 73112. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



## ATTACHMENT B

1. All records on the **Target Phone 3** described in Attachment A that relate to violations of 21 U.S.C. § 846 and that involve **LIN,** and other co-conspirators, including but not limited to:

   a. lists of customers and co-conspirators and related identifying information;

   b. communications and evidence of communications, including but not limited to call logs, voicemails, text messages, multimedia messages, emails, and messages sent through applications, between the user of the **Target Phone 3** and customers and co-conspirators;

   c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e. any information recording **LIN** schedule or travel, including but not limited to location information; and

   f. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **Target Phone 3** at the time the things described in this warrant were created,

edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.